UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ASSIST FINANCIAL SERVICES, INC., a South Dakota Corporation, Plaintiff, vs. FREIGHT ONE TRANSPORTATION, INC., a California Corporation, and DAVID PALACIOS, Defendants | 4:20-cv-4015 MEMORANDUM AND ORDER |

Pending before the Court is Plaintiff's Amended Motion for Default Judgment (Doc 17) with several affidavits in support (Doc. 19, 20, 21). As explained in the Court's Memorandum and Order (Doc. 15) addressing Defendant's previous Motion for Default Judgment (Doc. 9), Plaintiff Assist Financial Services, Inc., filed a Complaint against Defendants Freight One Transportation, Inc. and David E. Palacios raising the following claims: 1) Breach of Purchasing Agreement against Freight One; 2) Breach of Purchasing Agreement against Palacios, d/b/a/ Freight One; 3) Breach of Guaranty against Palacios; 4) Fraudulent Inducement & Deceit against Defendants. (Doc. 1). When Defendants

failed to respond, Plaintiffs filed a Motion for Default (Doc. 5) and the Clerk of Court filed an entry of default (Doc. 8) pursuant to FRCP 55(a). Plaintiffs subsequently filed a Motion for Default Judgment. (Doc. 9).

FRCP 55(b)(1) provides that the Clerk must enter a default judgment if the amount is for a sum certain. In other cases, according to FRCP 55(b)(2), the party must apply to the Court for a default judgment. *Stephenson v. El-Batrawi*, 524 F.3d 907, 917 n.11 (8th Cir. 2008) (quoting *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003)). In ruling on Plaintiff's Motion, the Court first determined that diversity jurisdiction exists, 28 U.S.C. § 1332(a), and that South Dakota law applies to resolution of the claims. (Doc. 15). The Court denied the Motion, however. (Id.). The Court's rationale was that it was unable to determine the specific amounts of the costs and fees owed to Plaintiff because some amounts had been redacted on the documents filed with the Court. (Id.). Furthermore, the Court denied the request for attorneys' fees because, although authorized by the parties' contract, (Doc. 1-1, § 22), the Court was required to determine whether the fee requested was "reasonable." *In re S. Dakota Microsoft Antitrust Litig.*, 707 N.W.2d 85, 98 (S.D. 2005). That determination and the amount of damages could not be made without additional information concerning

damages and the mathematical calculations used to support damages and attorneys' fees. (Doc. 15).

Almost one year after the court's entry of Judgment, Plaintiff filed an Amended Motion for Default Judgment which is now before the Court. (Doc. 17). The Court notes that the copy of the parties' contract has had the redactions removed so that the damages claimed are now reflected as sums certain. (Doc. 21-1).

## DISCUSSION

### 1. Default

When the Court has been asked to render a default judgment pursuant to Rule 55(b)(2), it is given the discretion to hold a hearing or otherwise obtain evidence to ascertain the appropriate amount of damages. *Stephenson*, 524 F.3d at 915. As was pointed out in *Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 718 (8th Cir. 2019), this determination is not simply a mathematical computation by the court. Rather, the court first must determine whether the plaintiff has stated a substantive claim. In *Marshall v. Baggett*, 616 F.3d 849 (8th Cir. 2010) the court made clear that, although a court may enter a default judgment, it is "incumbent upon the district court to ensure that the unchallenged facts constitute a legitimate cause of action prior to entering final judgment." *Id.* at 852-53 (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (cleaned up)). The *Marshall* court vacated

the judgment despite the default because "the complaint was insufficient to state a claim." 616 F.3d at 852-53. The court in *Glick* did likewise. 944 F.3d at 718. See also *Martinizing International, LLC v. BC Cleaners, LLC*, 855 F.3d 847, 850 (8th Cir. 2017). In contrast, the complicated and detailed facts in *Stephenson* warranted a default judgment. 524 F.3d at 912-14. See also *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817 (8th Cir. 2001) (default affirmed).

After the court has determined that the plaintiff has a legitimate cause of action, it proceeds to calculate the amount of the judgment. As the court explained in *Everyday Learning*, "When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding." *Id.* at 818. See also *American Red Cross v. Community Blood Center of the Ozarks*, 257 F.3d 859, 863-64 (8th Cir. 2001). The court has discretion whether or not to hold a hearing. As was noted in *Stephenson*, the court was not required to do so despite the request of the defendant because a hearing was "unnecessary," given that "each category of damages was supported by extensive documentary evidence." 524 F.3d at 916.

## 2. Plaintiff's claims

As noted above, Plaintiff claims damages from breach of contract, breach of guaranty, and fraudulent inducement and deceit. The required elements to form a

valid contract in South Dakota are (1) parties capable of contracting; (2) their consent; (3) a lawful purpose; and (4) sufficient consideration. *Setliff v. Akins*, 616 N.W.2d 878 (S.D. 2000) (citing S.D.C.L. § 53-1-2). To prove a breach of contract plaintiff must show by a preponderance of the evidence that 1) an enforceable promise existed; 2) the defendant breached the contract; and 3) damages resulted from defendant's breach of the contract. *First Bank & Trust v. Greene Enterprise, LLC*, 2014 WL 5503208 (D.S.D. 2014) (citing *McKie v. Huntley*, 620 N.W.2d 559, 603 (S.D. 2000)).

Plaintiff has supplied the affidavit of Merrell Holbrook, Jr., Chief Operating Officer and Chief Financial Officer for Assist Financial, in support of its claims. (Doc. 21). CFO Holbrook asserts personal knowledge of the circumstances of the facts in his affidavit (id., ¶2, PgID 153) and of the business records in support of Plaintiff's claims. (Id., ¶ 3 PgID 153). According to the Holbrook Affidavit, the parties entered into a Factoring and Security Agreement on October 30, 2018 (Doc. 21-1) with an addendum Guaranty signed by Defendant David E. Palacios on the same day (Doc. 21-2). Affiant asserts Defendant sold 53 accounts to Plaintiff at a face value of $121, 975 (Doc. 21, ¶ 7, PgID 155), and the affidavit includes supporting information concerning invoices (Doc. 21-3 and 21-4). Affiant asserts personal knowledge of Defendants' defaults, including supplying inaccurate statements of indebtedness, failure to repurchase defaulted accounts, interference

with Plaintiff's right to receive payments of accounts, and failure to assist with collection after acknowledging certain invoices were spurious. (Doc. 21, ¶¶ 9-11, PgID 156-57). Affiant designates October 9, 2019 as the date of breach of contract. Affiant asserts Plaintiff endeavored to collect on defaulted accounts and had some success. (Id., ¶ 17 and Doc. 21-5). Affiant cited to the supporting sections of the contract for the fees claimed and to S.D.C.L. § 21-1-13.1 as support for the claim for prejudgment interest. (Id., ¶¶15-16, PgID 158-59).

Plaintiff's Complaint asserts that pursuant to the parties' Agreement, Plaintiff purchased Defendants' accounts and paid Defendants the agreed upon-sum. (Doc. 1, ¶ 16, PgID 4). Plaintiff further alleges that Defendants interfered with Plaintiff's efforts to collect accounts; submitted documents with materially false and misleading information; supplied inaccurate information about goods and services encompassed by the agreement; and refused to return misappropriated advances. (Doc. 1, ¶ 23, PgID 5). Plaintiff supports the claims with a chart listing spurious accounts. (Id., ¶ 27, PgID 7-9). Defendants were served with the Complaint on February 4, 2020. (Doc. 3 and 4).

The Court has examined the Complaint and supporting affidavit and documents. The Court finds Plaintiff has a legitimate cause of action based on Defendants' breach of the contract and breach of the Guaranty, and proceeds to the question of appropriate damages.

### 3. Damages

Plaintiff has claimed damages based on the value of the outstanding invoices, a closing fee, a default fee, collection charges and an early termination fee. (Doc. 21-1). Each is discussed below.

Plaintiff claims damages of $98,773.00 for outstanding invoices. (Doc. 18, PgID 137). Plaintiff alleges in its Complaint (Doc. 1) that it entered into a factoring agreement (Doc. 21-1) with the individual and corporate Defendants, in which it purchased Defendants' accounts. Subsequently Plaintiff discovered Defendants had misled it about certain accounts. (Doc. 21). The affidavit of Plaintiff's Chief Financial Officer and Chief Operating Officer describes the worthless value of several accounts, discovered only after Plaintiff endeavored to determine why they had not been paid. (Doc. 21, ¶¶ 10-11). Plaintiff has attached lengthy documents listing the unpaid accounts, their value, date of payment, and days past due. (Doc. 21-3, 21-4, 21-5). Plaintiff continued its efforts to collect unpaid accounts and reduced that amount. (Doc. 21, ¶ 17). It is noteworthy that Plaintiff mitigated damages by endeavoring to collect unpaid accounts. It is also important to take note of the adjustments to Plaintiff's calculations as they developed over time, because the amount ultimately identified as damages based on outstanding invoices has been reduced. The court finds that the amount requested at the time of this decision is $98,773.00, (Doc. 18, PgID 137) and grants that amount to Plaintiff.

The court finds the amount has been established by substantial proof, including the Affidavit of Merrell Holbrook, Jr. (Doc. 21) and its attachments.

Plaintiff requests an account closing fee of $500. This is identified in the Factoring and Security Agreement between the parties (Doc. 21-1, § 12) as a fee that will be incurred at the voluntary or involuntary termination of the Agreement. The claimed fee is supported by substantial evidence, including the Agreement and Holbrook affidavit (Doc. 21, PgID 159) and that amount is awarded to Plaintiff.

Plaintiff claims a default fee of $2439.50. Plaintiff's entitlement to the fee has been supported by substantial proof including the Agreement (Doc. 21-1, § 9) and the Holbrook affidavit (Doc. 21, PgID 159).

The Parties' Agreement (Doc. 21-1, § 10.3) authorizes a collection charge of $100 per account, which as applied to the eleven accounts documented (Doc. 21, PgID 159), amounts to $1100.00, and is awarded to Plaintiff.

The Parties' Agreement (Doc. 21-1, § 12) authorizes an early termination fee which affiant Holbrook explained (Doc. 21, ¶ 16.d. note 1, PgID 159). The fee amounts to $4588.64 and is awarded to Plaintiff.

The Parties' Agreement (Doc. 21-1, § 10.12) allows for the collection of prejudgment interest to the highest extent allowed by law. S.D.C.L. § 21-1-13.1 permits interest of 10%. Calculated from October 19, 2019, identified as the date

of default, to June 30, 2021, the amount of prejudgment interest on the accounts receivable is $17,900.19.

The total requested and awarded by the Court for the value of the outstanding invoices, closing fee, default fee, collection fee, early termination fee, is $107,401.14. The amount of prejudgment interest awarded by the Court is $17,900.19.

### 4. Attorneys' fees

Plaintiff has requested attorneys' fees based on the Factoring and Security Agreement (Doc. 21-1, § 22) which, in the event of default, requires Defendants to reimburse Plaintiff "for the actual amount of all costs and expenses, including attorneys' fees." (Id., §22). The Agreement lists the activities of counsel that call for reimbursement of attorneys' fees, including "collection of full payment pursuant to this contract" (id., § 22.2), "actual costs" (id., § 22.3), and the "actual amount of all costs and expenses, including attorney fees which Purchaser may incur in enforcing this agreement." (Id., § 22.4).

The South Dakota Supreme Court has stated that, "Attorney fees are allowed when there is a contractual agreement that the prevailing party is entitled to attorney fees...." *Aqreva v. Eide Bailly, LLC*, 950 N.W.2d 774, 792 (S.D. 2020) (quoting *Fuller v. Croston*, 725 N.W.2d 600, 612 (S.D. 2006) (quoting *Credit Collection Services, Inc. v. Pesicka*, 721 N.W.2d 474, 476 (S.D. 2006)) (cleaned

up)). Contract provisions are not dispositive, however, for the attorneys' fees awarded must be "reasonable." *In re South Dakota Microsoft Antitrust Litigation*, 707 N.W.2d 85, 98 (S.D. 2005).

The South Dakota Supreme Court has directed that assessment of reasonableness begins with the calculation of "the hourly fee multiplied by the attorney's hours." *Id.* at 99 (citing *Duffy v. Circuit Court, Seventh Judicial Circuit*, 676 N.W.2d 126, 134 (S.D 2004)). This calculation is followed by consideration of the following factors:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*SD Microsoft* at 98- 99 (quoting *City of Sioux Falls v Kelley*, 513 N.W.2d 97, 111 (S.D. 1994)).

The South Dakota Supreme Court also has recognized that the "fee should not be determined by any single factor, but rather all of the factors should be taken into consideration in determining a reasonable fee." *Crisman v. Determan Chiropractic, Inc.*, 687 N.W.2d 507, 514 (S.D. 2004) (citing *Duffy*, 676 N.W.2d at 134). Furthermore, "a fee applicant is not limited to paying out-of-state counsel the reasonable local rates." *SD Microsoft* at 103 (citing *Emery v. Hunt*, 236 F.Supp.2d 1033, 1039 (D.S.D. 2002) (cleaned up)). The *Microsoft* court added that if hiring out-of-state counsel was "reasonable," counsel's hourly rate is determined by the attorney's "degree of skill, experience, and reputation." *Id.* (quoting *Anderson v. Wilson*, 357 F.Supp.2d 991, 997 (E.D. Ky. 2005) (cleaned up)).

In the case at bar, plaintiffs have requested attorneys' fees and costs for attorneys employed at Ullman & Ullman, P. A., Boca Raton, FL, and Redstone Law Firm, Sioux Falls, SD. Attorneys Michael Ullman and Jared Ullman specialize in factoring work and, according to the affidavit of Jared Ullman, their contract with Plaintiff provides for fees of $600/hour for Michael Ullman and $400/hour for Jared Ullman. (Doc. 20). The affidavit asserts these fees are customary in the particularized field in which Ullman & Ullman engage. (Id.)

Michael Ullman billed for 2.8 hours of work and documented the hours worked. Jared Ullman billed for 35.10 hours and documented his hours and work (Id.) Co-counsel Sommers's Memorandum requests $14,600 (Doc. 18, PgID 141) for Ullman & Ullman. Based on the specialized work in which these attorneys engage, the contract provisions authorizing the fees, and the number of hours devoted by each attorney to the case as documented in the affidavit of Jared Ullman (Doc. 20), and Co-counsel Sommers's filing (Doc. 18), the Court finds the attorneys' fees requested for Ullman & Ullman are reasonable and awards them in full.

Ullman & Ullman have documented costs in the amount of $1943.04 (Doc. 20). The Court finds that based on the work performed on this case by Ullman & Ullman, the costs are reasonable and are awarded in full.

Redstone Law Firm attorneys Meghann M. Joyce, Lisa Prostrollo and Christopher D. Sommers have requested attorneys' fees and costs. The fees requested are based on typical hourly rates for attorneys with counsels' experience and on hours devoted to the case of 30.35. (Doc. 18). Attorney Sommers has documented the work performed on the case. (Id., ¶ 6). The total requested is $7048.18. The Court finds the attorney fee request is reasonable and awards it in full. Redstone Law Firm has claimed $610 as costs. The costs are documented in the affidavit of Attorney Sommers (Doc. 18). The Court finds the costs requested are reasonable and awards them in full.

## 5. Guaranty

Plaintiff has filed suit against Freight One Transportation, Inc., and David E. Palacios as an individual, based on Defendant Palacios's Guaranty filed with the Factoring and Security Agreement (Doc. 21-2). S.D.C.L. § 56-1-1 defines a guaranty as "a promise to answer for the debt, default, or miscarriage of another person." A guarantor's liability "will not be enlarged beyond the plain and certain import of the guaranty contract" and "any ambiguous or uncertain terms in a guaranty will be interpreted most strictly against the party who prepared it." *First Dakota National Bank v. Graham*, 864 N.W.2d 292, 296 (S.D. 2015) (quoting *Robbins & Stearns Lumber Co. v. Thatcher*, 453 N.W.2d 613, 615 (S.D. 1990)). If valid, a guaranty may be enforced to the extent of a quantifiable benefit the guarantor received. *Northwestern Services Corp. v. Si-Tanka Huron Univ.*, 731 N.W.2d 625, 632 (S.D. 2007).

In *Marshall*, where plaintiffs sought a default judgment, the Eighth Circuit addressed the issue of individual liability of a defendant sued in conjunction with the corporation of which she was the president. 616 F.3d at 851. The Court set forth the rule that an individual may not be accountable for corporate debts based on an agreement which is signed only in an official capacity as president, not in an individual capacity. *Id.* at 853. Lacking any other theory upon which to hold the individual liable, the complaint against her should have been dismissed. *Id.* at 855.

See also *Martinizing*, 855 F.3d at 852 (default judgment reversed against individual defendants who had not participated in trademark infringement or violations of Minnesota Deceptive Trade Practices Act).

In contrast, individual liability has been imposed if the facts so warrant, and as relevant to the case at bar, where a corporate officer has signed a guaranty. In *First Bank & Trust v. Greene Enterprise, LLC*, 2014 WL 5503208 (D.S.D. 2014), plaintiff sought a default judgment against defendant for conversion, breach of the parties' Factoring and Security Agreement, and breach of the guaranty by the individual defendant. *Id.* *1. The court concluded the complaint alleged a legitimate cause of action, defendants had breached the contract and guaranty, and damages were recoverable from the company and defendant individually. *Id.* The amount of damages was supported by detailed calculations in affidavits from the bank vice-president and bank's attorney, and the court awarded a default judgment and the full amount of damages claimed. *Id.*

In the case at bar, Defendant David E. Palacios signed a Guaranty (Doc. 21-2) pursuant to which, "for valuable consideration" (id., PgID 176) he accepted the obligation of guaranteeing payment of all legitimate payments owed by his company, Freight One Transportation, Inc., to Assist Financial as follows: he "shall promptly and fully perform, pay and discharge all of its present and future liabilities, obligations and indebtedness to the Company… This Guaranty is an

absolute guaranty of payment and not of collectibility." Id. Furthermore, Defendant Palacios agreed that "the records of the Company shall be received as conclusive evidence of the amount of the indebtedness at any time owing." Id. The Guaranty was executed at the time the parties signed the Factoring and Security Agreement. (Id.). Defendants' debts to Assist Financial have not been paid.

Given the terms of the Guaranty requiring payment by Defendant Palacios of the obligations of Freight One Transportation, Inc. based on the records supplied by Assist Financial, and the circumstances under which the Guaranty was signed, the Court finds that Defendant Palacios is liable for the debts owed by Freight One Transportation, Inc. to Assist Financial in both an individual and representative capacity.

## CONCLUSION

Plaintiff has demonstrated that it is entitled to default judgment against Defendants based on legitimate claims of breach of contract and breach of guaranty. Plaintiff has supplied documentation of its Factoring and Security Agreement and Guaranty with Defendants. The Agreement lists damages payable on default. Plaintiff has supported its claims for damages, costs and attorneys' fees with detailed information including affidavits and business records. Plaintiff is entitled to the damages, costs and fees requested. (Doc. 18, PgID 139 and 142).

Accordingly, it is ordered that Plaintiff is awarded the following:

1. Compensatory damages for outstanding invoices of $98,773.00;

2. Closing fee of $500;

3. Default fee of $2349.50;

4. Collection fee of $1100;

5. Early termination fee of $4588.64;

6. Prejudgment interest of $17,900.19;

7. Attorneys' fees of $21,648.18;

8. Costs of $2553.04.

Dated this 9th day of February, 2022.

BY THE COURT:

_Lawrence L. Piersol_
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

_Matthew Thelen_